## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

RICHARD L. STEHL

AND

RICHARD G. HADDAD,

*Plaintiffs*,

v.

JAMES M. CRETELLA,

*Defendant*.

25-cv-_____

JURY TRIAL DEMANDED

## **COMPLAINT**

1.      This lawsuit arises from Defendant James M. Cretella's ("Cretella") relentless and calculated invasion of privacy, conducted through a years-long campaign of secret electronic stalking, unauthorized surveillance, and unlawful access to Plaintiffs' most sensitive and confidential files.

2.      This was not a momentary lapse in judgment. It was not a mistake. It was a sustained and intentional violation of Plaintiffs' trust and legal rights—carried out hundreds of times, at all hours of the day and night, often deep into the early morning hours.

3.      The extent of this cyberstalking is not just disturbing; it is outrageous. Cretella did not merely stumble upon private information; he hunted for it, exploited security controls, and repeatedly trespassed into the most personal and private aspects of Plaintiffs' lives.

4.      Cretella had no legitimate purpose for infiltrating Plaintiffs' private and confidential files at the law firm where all three men were partners.[1] Plaintiffs, as the firm's two most senior officers—serving as Chairman and President—had once promoted Cretella to Chairman of the firm's finance department.

5.      Yet, instead of respecting the security protocols that ensured attorneys could store personal and confidential materials inaccessible to others, Cretella found a way to circumvent those safeguards.

6.      And rather than reporting the vulnerability or acting with even the bare minimum of ethical decency, he deliberately exploited it.

7.      Over and over again, he sought out, reviewed, and even discussed the most intimate and sensitive details of Plaintiffs' personal, professional, and family lives. He knew he had no right to this information. He knew Plaintiffs would never consent. And yet he pored over and obsessed over it anyway.

8.      The nature of the files Cretella accessed leaves no doubt as to the seriousness of his misconduct. Even a glance at the file names would have made it instantly clear that they contained deeply personal, highly confidential, and privileged material. But rather than stopping at that obvious boundary, Cretella pressed on, greedily digging into Plaintiffs' most sacred private matters.

9.      Equally disturbing—and downright bizarre—is that Cretella's fixation on Plaintiffs wasn't limited to matters of consequence. He combed through even the most mundane details of their lives, obsessing over golf plans, marathon registrations, health club memberships, party guest

---

[1] Because the law firm is a professional corporation, its equity owners are technically shareholders, but they are commonly and colloquially called "partners."

lists, Christmas card addresses, bathroom renovations, and vacation itineraries—as if any of it were his business.

10.    Among the troves of private and confidential information, Cretella accessed:

- Security codes to Plaintiff Stehl's home surveillance system, including codes for access to live interior and exterior camera feeds;

- Confidential medical records detailing the psychiatric condition of a Plaintiff's family member;

- Multiple sets of personal tax return information;

- Stored computer password information;

- Private travel itineraries and personal vacation schedules;

- Confidential employment agreements being negotiated with firm contract attorneys;

- Agreements related to family business matters;

- Detailed plans for a home bathroom renovation;

- Credit card authorization documents;

- Employment matters involving a Plaintiff's children;

- Privileged attorney-client communications regarding deeply personal family legal affairs;

- A document explicitly titled "Personal Financial Statement – Balance Sheet"; and

- Legal documents concerning the divorce proceedings of a Plaintiff's child, including custody arrangements for that Plaintiff's grandchildren, child support obligations, and asset allocations.

11.    These latter records were not just sensitive—they were so personal and confidential that even the New York courts keep them under seal. Yet that did not stop Cretella. As a licensed attorney, Cretella knew full well that accessing—and worse, discussing—attorney-client

privileged communications between Plaintiffs and their family lawyers was not just improper, but a flagrant violation of legal and ethical boundaries.

12.     Fully aware that his actions were unlawful and indefensible, Cretella went to great lengths to avoid detection. He prowled through files under the cover of darkness—late at night and in the early morning hours—deploying forensic evasion tactics in a futile effort to cover his tracks. The full scope of his misconduct remains unknown, but fortunately, some of his clumsy attempts at deception failed to outmaneuver the firm's security protocols.

13.     But the sheer volume of his unlawful conduct, the brazen pattern of his unauthorized access, and his intentional concealment expose the depth of his misconduct. His actions were not just a gross violation of privacy; they were an assault on fundamental legal and ethical principles. They were a betrayal of core partnership duties. And, at the most basic level, they were the acts of a person who demonstrated a blatant disregard for integrity and ethical responsibilities.

14.     As a result of these egregious violations, Plaintiffs have suffered severe emotional distress, humiliation, and tangible harm. They have been forced to expend substantial resources investigating and mitigating the damage inflicted by Cretella's cyberstalking and unlawful surveillance.

15.     And the irony is not lost here: Cretella, a man of privilege and wealth, who for two decades benefited from the mentorship and advocacy of Plaintiff Stehl, exploited the very opportunities given to him to commit these wrongful acts.

16.     Plaintiffs seek no less than $10,000,000.00 each in damages to hold Cretella fully accountable for this unprecedented invasion of their privacy.

## PARTIES

17.     Plaintiff Richard L. Stehl is a resident of New York. For thirty-two years, he has worked as an attorney at the law firm of Otterbourg, P.C., where he serves as the Chairman of the firm's Board of Directors.

18.     Plaintiff Richard G. Haddad is a resident of New York.  For thirty-seven years, he has worked as an attorney at the law firm of Otterbourg, P.C. in New York City, where he serves as President of the firm.

19.     Defendant Cretella is a resident of Connecticut.  He previously worked as an attorney at the law firm of Otterbourg, P.C. for approximately twenty years, until he departed in February 2025. He was never an officer or director of Otterbourg, P.C.

## JURISDICTION & VENUE

20.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because Plaintiffs are citizens of New York and defendant is a citizen of Connecticut, and the amount in controversy exceeds $75,000.00.

21.     This Court has general personal jurisdiction over Defendant Cretella because he resides in Connecticut and committed tortious acts in the state.

22.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(1)-(2) because Defendant Cretella resides in Wilton, Connecticut, and a substantial portion of the cyberstalking acts were conducted from his home.

## FACTUAL ALLEGATIONS

23.     Richard L. Stehl, Richard G. Haddad, and James M. Cretella worked together as attorneys for decades at the law firm of Otterbourg, P.C.

24.     For years, without Plaintiffs' knowledge or consent, Cretella secretly accessed their private, personal, and highly confidential files through the law firm's internal online file system.

25.     The depth of his invasion was not incidental—it was systematic. Hundreds of times, Cretella infiltrated files that were clearly labeled as personal and confidential, including privileged attorney-client communications, financial statements, and intimate family records. These files were deliberately stored in restricted-access folders designed to be private, yet Cretella found a way around those digital barriers. Plaintiffs never granted him access, nor did they even suspect that their trusted colleague was carrying out such a calculated intrusion.

26.     The evidence of Cretella's cyberstalking is staggering. He repeatedly accessed files in the dead of night—often between 11:00 p.m. and 3:30 a.m. (*e.g.*, 11:55 p.m.; 2:07 a.m.; 12:06 a.m.; 2:58 a.m.; 3:34 a.m.; 2:30 a.m.; 11:48 p.m.)—as if the cover of darkness would somehow erase his digital fingerprints. Forensic analysis confirms that he frequently retrieved files shortly after they were created, demonstrating an obsessive level of surveillance over Plaintiffs' personal affairs.

27.     The nature of the documents Cretella accessed exposes the sheer depravity of his misconduct:

28.     **Home Security System Data**: Cretella retrieved an email labeled "Re: Stehl Cameras," which contained QR codes and login credentials granting access to live security feeds of the Stehl family home—inside and out. This was not an accident; it was an unconscionable violation of the family's safety. This breach is particularly troubling given that Cretella had previously viewed the exact same email, fully aware of its contents and the serious personal security implications for Stehl, his wife, and their five children. Yet, rather than alerting Stehl to the exposure of this highly sensitive information, Cretella instead discussed it with another partner who recently left, who also accessed it. As a direct result of this reckless intrusion, Stehl was forced to inform his family of the breach, causing immediate distress and alarm over the unsettling reality

that they had been spied on. He was also compelled to hire a security contractor to reprogram the system. Yet, despite these efforts, Stehl and his family remain deeply unsettled, not knowing what other steps Cretella may have taken to surveil them or compromise their privacy.

29.     **Confidential Tax Records**: Cretella infiltrated emails titled "Re: Your tax return" and "Re: Stehl tax returns," obtaining sensitive tax data, including documents requiring passwords derived from Stehl's Social Security number—information Cretella had previously accessed in unrelated financial filings.

30.     **Privileged Legal Communications**: Cretella read and reviewed emails explicitly marked "Privileged and Confidential," which contained deeply personal family legal matters, including litigation concerning a Plaintiff's mentally impaired family member, divorce proceedings involving a Plaintiff's child, and confidential employment matters.

31.     **Intimate Personal Details**: Cretella pried into Plaintiffs' vacation itineraries, home renovation plans, and financial statements—documents that had no conceivable relevance to him.

32.     Additionally, Cretella covertly viewed confidential law firm Board of Directors emails regarding partner compensation, personnel disputes, and internal management strategies—violating not only privacy laws but the fundamental ethical duties of a law partner. The firm is still conducting its investigation of its own claims against Cretella.

33.     The Otterbourg firm's ongoing internal investigation has started to shed light on potential motivations for Cretella's egregious misconduct directed at the firm's two senior officers—perhaps an attempt to obtain leverage should his reckless and high-risk lifestyle come under scrutiny.

34.     After Cretella's departure, it became clear that he had deleted communications from his firm-issued, firm-owned phone. In response, the firm launched an analysis of its phone billing records—records it routinely receives because the firm pays for the service.

35.     The investigation remains ongoing but has already revealed that Cretella engaged in highly reckless, inappropriate and potentially criminal personal conduct. At a minimum, his actions were wholly improper, especially given that they took place during firm-funded business travel, in firm-paid hotel accommodations, and using a firm-paid phone and cellular service.

36.     By way of just one example among many: in November 2024, the secured finance trade association, SFNet, held its annual convention in Houston, Texas. Cretella, without business justification, traveled to Houston a day early. On the evening of November 12, 2024, between 10:31 p.m. and 11:46 p.m., he exchanged 40 text messages with the phone number 281-XXX-3253. That number apparently belongs to an individual known as "Goddess Kat," an escort who advertises herself as an "upscale dominatrix, foot fetishist, and masseuse."

37.     Notably, this was not an isolated incident—Cretella had previously traveled early to Texas for a prior SFNet convention and again arranged to meet with another woman. Additional instances of similar conduct have since been uncovered.

38.     Whether motivated by fear that his double life would be exposed or by sheer disregard for ethical and legal obligations, Cretella sought out confidential information that could potentially be used against the firm's leadership. If his intent was to find leverage, he failed—Stehl and Haddad lead professional, law-abiding lives, remaining faithful to their families, their firm, and their partners.

39.     In an effort to mask his misconduct, Cretella employed forensic evasion tactics, frequently previewing or viewing files (and gaining access to confidential attachments) rather than

fully opening the files to try to avoid leaving a trail. But digital forensics captured the truth: his relentless surveillance was neither incidental nor accidental—it was deliberate and sustained.

40.     Even more troubling, forensic records reveal that another former Otterbourg partner accessed some of these same confidential files within hours of Cretella. Their synchronized activity strongly suggests a coordinated effort to exploit Plaintiffs' private data.

41.     At no point did Cretella have any legitimate reason to access these files. His actions were not only unauthorized but designed to extract personal and sensitive information for his own purposes, at the direct expense of Plaintiffs' privacy, security, and dignity.

42.     The consequences of his misconduct have been profound. Plaintiffs have endured humiliation, distress, and significant emotional and economic harm—damage that will only be fully uncovered through further investigation and discovery.

## COUNT ONE: INTRUSION UPON SECLUSION

43.     Plaintiffs hereby incorporate the preceding paragraphs as if fully stated herein.

44.     Without Plaintiffs' consent and against their will, Cretella invaded Plaintiffs' protected rights of privacy by surreptitiously obtaining, viewing, accessing, collecting, and disclosing sensitive and confidential information from Plaintiffs' respective private files.

45.     Cretella, through electronic means, intentionally and repeatedly intruded into Plaintiffs' personal files in which Plaintiffs' had a reasonable expectation of privacy, and improperly, and without consent, rummaged through the private affairs and concerns of Plaintiffs and their families by accessing and viewing numerous highly confidential and personal files of both Mr. Stehl and Mr. Haddad, including Plaintiffs' personal financial information, sensitive and privileged information related to Plaintiffs' respective families, and even access codes for the internal cameras at Mr. Stehl's personal residence.

46.     Cretella did not carry out these activities for reasonable or legitimate purposes, but rather to gain private information about Plaintiffs and to cause substantial harm to Plaintiffs and their families.

47.     Plaintiffs had a reasonable expectation of privacy in the locations in which their private files were saved and stored, and a reasonable expectation that Cretella and other third parties were not viewing or accessing said files. Plaintiffs had no knowledge of and did not consent to the disclosure and dissemination of their private files.

48.     Cretella knew that he did not have either legal or personal permission to view these highly confidential and personal files as he had never been given permission to access these files, many of these files were labeled personal or confidential, the files were kept separate from firm documents, and he had no legal or personal need to use these files.

49.     Cretella's knowledge that he lacked permission is further evidenced by the fact that he carried out his unlawful invasions of Plaintiffs' privacy in secret, and often late at night.

50.     This invasion of privacy was highly offensive to both Mr. Stehl and Mr. Haddad and would be to a reasonable person. Indeed, a reasonable person would find it highly offensive that their once-trusted colleague accessed their deeply personal and highly sensitive information repeatedly and continuously.

51.     As a direct and proximate result of these repeated intrusions upon their seclusion, Plaintiffs have suffered damages, including embarrassment, humiliation, emotional distress, and economic damages, in an amount to be determined at trial.

## DEFENDANT'S CONDUCT WARRANTS PUNITIVE DAMAES

52.     Plaintiffs hereby incorporate the preceding paragraphs as if fully stated herein.

53.     Defendant's conduct warrants the imposition of punitive damages. The factors justifying punitive damages include, at a minimum, the following:

    i.   At all times relevant, Defendant knew that he was unlawfully intruding upon Plaintiffs' privacy rights.

    ii.   Defendant knowingly violated and disregarded Plaintiffs' privacy rights and took steps to actively conceal his misconduct.

    iii.   Defendant exhibited a longstanding pattern of violating Plaintiffs' rights, and violated their privacy without any legitimate justification, whatsoever.

    iv.   Defendant knew that accessing their private and confidential information would have damaging impact on Plaintiffs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that the Court award them relief against Defendant as follows:

54.    Actual and compensatory damages of at least $10,000,000.00 to each Plaintiff as well as interest, reasonable attorneys' fees, and costs, as allowed by law;

55.    Punitive damages, as allowed by law; and

56.    Such other and further relief as the Court deems appropriate.

## **JURY TRIAL DEMAND**

Plaintiffs demand trial by jury for all claims and issues that are so triable.


Date:  March 10, 2025

   _s/ John W. Cannavino_____
John W. Cannavino (ct06051)
Kara A. Zarchin (ct30783)
jcannavino@cl-law.com
kzarchin@cl-law.com
**CUMMINGS & LOCKWOOD LLC**
6 Landmark Square
Stamford, CT 06901
Tel: 203-351-4447
Fax: 203-708-3849
and

Daniel P. Watkins (*Pro Hac Vice* Forthcoming)
Andrew C. Phillips (*Pro Hac Vice* Forthcoming)

Hannah Menchel (*Pro Hac Vice* Forthcoming)
daniel.watkins@mwpp.com
andy.phillips@mwpp.com
hannah.menchel@mwpp.com
MEIER WATKINS PHILLIPS PUSCH LLP
919 18th Street NW, Suite 650
Washington, DC 20006
Telephone: (202) 256-4482

*Counsel for Plaintiffs*

8823725.1.docx 3/10/2025