UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------------ x
RICHARD STEHL and RICHARD G. HADDAD, :
:
                    Plaintiffs, :
:
v. :    25-CV-348 (SFR)
:
JAMES M. CRETELLA, :
:
                    Defendant. :
------------------------------------------------------------------ x

**MEMORANDUM & ORDER**

Plaintiffs Richard Stehl and Richard Haddad are senior partners at Otterbourg, P.C., a New York law firm. They bring this action against their former colleague, Defendant James Cretella, asserting a single claim of intrusion upon seclusion under Connecticut common law. This Opinion resolves Cretella's Motion to Dismiss the First Amended Complaint (ECF No. 35). Because I agree that New York law applies pursuant to choice-of-law principles, and New York does not recognize the tort of intrusion upon seclusion, I grant the Motion to Dismiss with leave for Plaintiffs to replead a claim of intentional infliction of emotional distress.

I. **BACKGROUND**

    A.    **Factual Background**

I accept as true the following facts from the First Amended Complaint ("FAC"), ECF No. 31. Plaintiff Richard L. Stehl is Chairman of the Board of Directors of Otterbourg. FAC ¶ 26. Plaintiff Richard G. Haddad is President of Otterbourg. *Id.* ¶ 27. Defendant James Cretella worked as an attorney at Otterbourg for twenty years, eventually rising to lead the firm's finance department. *Id.* ¶¶ 5, 28. Stehl and Haddad both live and work in New York. *Id.* ¶¶ 26-27. In contrast, Cretella lives in Connecticut. *Id.* ¶ 28.

The FAC alleges that Otterbourg's computer system was "configured to allow attorneys to store personal files in individual directories." *Id.* ¶ 6. Individual directories (which the FAC also describes as "personal directories," *id.* ¶ 13, and "workspaces," *id.* ¶¶ 7-9) "were expressly designed to be accessible solely by the designated attorney." *Id.* ¶ 8. Per the design, documents in the workspaces were configured to be automatically designated by the system as "private;" these files would then be "accessible only to the attorney to whom the workspace was assigned." *Id.* ¶ 9.[1] "If the attorney wanted to grant access to another person, they could do so by expressly authorizing access on a document-by-document basis." *Id.* The FAC describes various security measures adopted by Otterbourg, including requiring users to regularly update their passwords, use multi-factor authentication, and log in after a period of inactivity. *Id.* ¶¶ 10-12. The FAC says that, in light of these practices, Plaintiffs "had a reasonable expectation of privacy in their personal directories." *Id.* ¶ 13.

The FAC contends that Cretella deliberately circumvented these safeguards to view Plaintiffs' personal files. The FAC alleges that Cretella "repeatedly accessed files in the dead of night." *Id.* ¶ 35. "From his Connecticut home (and elsewhere)," *id.* ¶ 18, Cretella "initiated searches targeting and limited to Plaintiffs' files," *id.* ¶ 16. "Hundreds of times, Cretella infiltrated files that were clearly labeled as personal and confidential." *Id.* ¶ 34. The FAC states that Plaintiffs' files were "stored in folders designed to be private with restricted access, yet Cretella found a way around those digital barriers." *Id.* Although the FAC specifies that

---

[1] The FAC does not allege that Plaintiffs' files were actually designated as "private" or actually accessible only when authorization was provided.

"Plaintiffs never granted [Cretella] access," *id.*, it does not describe how Cretella circumvented Otterbourg's controls to gain access to Plaintiffs' files, *see id.*

The FAC states that Cretella gained access to numerous sensitive and personal files belonging to Plaintiffs, including the medical records for one plaintiff's family member, multiple years of Plaintiffs' personal tax returns, employment agreements negotiated between Otterbourg and other firm employees, communications between one plaintiff and his personal attorney concerning a family matter, and security codes for one plaintiff's home surveillance system. *Id.* ¶¶ 19, 37-44. Cretella allegedly used "forensic evasion tactics," such as previewing files rather than downloading them in their native format, "to try to avoid leaving a trail." *Id.* ¶ 47. The FAC also maintains that another Otterbourg partner accessed Plaintiffs' sensitive files, which "suggests a coordinated effort to exploit Plaintiffs' private data" between Cretella and this unnamed colleague. *Id.* ¶¶ 16, 48.

The FAC alleges that Cretella had no "legitimate reason to access these files." *Id.* ¶ 49. It posits that Cretella undertook these searches to gain leverage against Otterbourg's leadership, *id.* ¶ 46, and to "cause substantial harm to Plaintiffs and their families, *id.* ¶ 55. In doing so, the FAC states that Cretella transgressed the "legal and ethical boundaries" expected of any licensed attorney. *Id.* ¶¶ 20, 22.

The FAC brings a single cause of action for intrusion upon seclusion, seeking actual, compensatory, and punitive damages. *Id.* ¶¶ 51-63.

**B.    Procedural History**

Plaintiffs filed a Complaint on March 10, 2025. ECF No. 1. Cretella moved to dismiss the Complaint on April 10, 2025. ECF No. 29. Plaintiffs responded by amending as of right on April 23, 2025. FAC, ECF No. 31. Cretella filed a renewed Motion to Dismiss directed at

3

the FAC on May 7, 2025. Def.'s Mot. to Dismiss FAC, ECF No. 35; Def.'s Mem. of L. in Supp. of Mot. to Dismiss FAC ("Def.'s Mem."), ECF No. 35-1. Plaintiffs responded in opposition on May 28, 2025. Pls.' Mem. in Opp. to Def.'s Mot. to Dismiss FAC ("Pls.' Mem."), ECF No. 42. Cretella replied in support of his Motion on June 11, 2025. Def.'s Reply Mem. in Supp. of Mot. to Dismiss FAC ("Def.'s Reply"), ECF No. 46. Over Plaintiffs' opposition, I stayed discovery on July 18, 2025. ECF No. 52. Cretella filed a Notice of Supplemental Authority on November 20, 2025, ECF No. 53, which Plaintiffs responded to on November 21, 2025, ECF No. 54.[2] Cretella filed a Notice of Supplemental Authority on February 9, 2026. ECF No. 58. Plaintiffs filed a Notice of Supplemental Authority on February 10, 2026. ECF No. 59.

I heard oral argument on the Motion to Dismiss on February 13, 2026. ECF No. 63; *see also* Tr. of Oral Argument on Feb. 13, 2026 ("Tr."), ECF No. 62.

## II.   LEGAL STANDARD

### A.   Rule 12(b)(1)

A district court must grant a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) "when the court lacks the statutory or constitutional power to adjudicate it." *Luckett v. Bure*, 290 F.3d 493, 496 (2d Cir. 2002) (citation and internal quotation marks omitted). "It is well-settled that the 'plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence.'" *Matthias v. United States*, 475 F. Supp. 3d 125, 133 (E.D.N.Y. 2020) (quoting *Aurecchione v. Schooman Transp. Sys., Inc.,* 426 F.3d 635, 638 (2d

---

[2] The Notice of Supplemental Authority alerted me that Otterbourg has filed a separate action against Cretella in New York state court for breach of the Otterbourg shareholder agreement and other business torts. ECF No. 53.

Cir. 2005). Although the court "must accept as true all material factual allegations in the complaint," a court should not "draw inferences from the complaint favorable to plaintiff[s]." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004). "In resolving the question of jurisdiction, the district court can refer to evidence outside the pleadings." *Student Members of Same v. Rumsfeld*, 321 F. Supp. 2d 388, 392 (D. Conn. 2004) (quoting *Luckett*, 290 F.3d at 496-97).

### B.     Rule 12(b)(6)

To survive a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although this "plausibility" requirement is "not akin to a probability requirement," it "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. I must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). However, I am not bound to accept "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008).

## III.    DISCUSSION

Cretella submits three arguments in favor of dismissal. First, Cretella asserts the FAC must be dismissed for lack of subject-matter jurisdiction; he says that Plaintiffs lack standing because their injuries were self-inflicted. Def.'s Mem. 13-27.[3] Second, Cretella argues that

---

[3] I cite throughout to the pagination set by ECF rather than any internal numbering system contained within the parties' briefing.

5

choice-of-law principles dictate that New York law applies to this dispute, and that New York does not recognize the tort of intrusion upon seclusion. *Id.* at 17-27. Third, assuming *arguendo* that Connecticut law applies, Cretella contends that the FAC fails to state a claim of intrusion upon seclusion. *Id.* at 27-37.

### A. Standing

Cretella asserts that Plaintiffs lack standing because any injuries they suffered from Cretella's ability to access their files are not fairly traceable to Cretella's actions but rather to the vulnerabilities in Otterbourg's security systems that Plaintiffs failed to remedy. Def.'s Mem. 13-17. Cretella supports this argument with a declaration, which contends that Plaintiffs had cause to understand beginning in 2024 that certain files in individual attorney folders were freely accessible to other Otterbourg employees but nonetheless failed to (1) take specific measures to safeguard their own personal files or (2) undertake further changes in Otterbourg's data storage practices. Cretella Decl. ¶¶ 12-22, ECF No. 35-2. Plaintiffs respond that their injuries should not be understood to be self-inflicted "merely because a victim failed to anticipate misconduct or erect higher barriers against it." Pls.' Mem. 15.

Plaintiffs have the better argument here. "An injury is 'self-inflicted' so as to defeat standing only if 'the injury is so completely due to the plaintiff's own fault as to break the causal chain.'" *Backer ex rel. Freedman v. Shah*, 788 F.3d 341, 344 (2d Cir. 2015) (quoting *St. Pierre v. Dyer*, 208 F.3d 394, 402 (2d Cir. 2000)). "So long as the defendants have engaged in conduct that may have contributed to causing the injury, it would be better to recognize standing or to deny it on grounds apart from causation." Wright & Miller, Fed. Prac. & Proc. § 3531.5 (3d ed. 2025). The FAC alleges that Plaintiffs trusted their personal information was secure in Otterbourg's servers, and that when Cretella discovered a defect that permitted him

6

to view Plaintiffs' files, he failed to alert Plaintiffs. FAC ¶¶ 13-15. Indeed, the FAC contends that Cretella contributed to their injury by instructing another coworker on how to view Plaintiffs' personal files. *Id.* ¶¶ 16, 48. Taking all of these allegations as true, I conclude that the FAC supports the inference that Cretella at least contributed to the injury complained of by Plaintiffs.

### B. Choice of Law

Cretella urges me to apply New York law, which he says conflicts with Connecticut law in that New York does not recognize the privacy tort of intrusion upon seclusion. Def.'s Mem. 17-27. As I explain below, I agree that the laws of New York and Connecticut conflict. After applying choice-of-law principles, I conclude that New York law applies.

#### 1. A Conflict of Law Exists

"According to long-settled precedent, a federal court sitting in diversity borrows the forum State's choice-of-law rule." *Cassirer v. Thyssen-Bornemisza Collection Found.*, 596 U.S. 107, 115 (2022). "The threshold choice of law issue in Connecticut, as it is elsewhere, is whether there is an outcome determinative conflict between applicable laws of the states with a potential interest in the case." *W. Dermatology Consultants, P.C. v. VitalWorks, Inc.*, 322 Conn. 541, 556 n.13 (2016) (quoting *Cohen v. Roll-A-Cover, LLC*, 131 Conn. App. 443, 465-66 (2011)).

Connecticut recognizes the tort of intrusion upon seclusion. *See Goodrich v. Waterbury Republican-Am., Inc.*, 188 Conn. 107, 126-28 (1982); *Parnoff v. Aquarion Water Co. of Connecticut*, 188 Conn. App. 153, 172-73 (2019) (describing the elements for a claim of intrusion upon seclusion). Cretella argues that New York does not recognize this tort. Def.'s Mem. 25-26. Although Plaintiffs disputed this point in their briefing, *see* Pls.' Mem. 34-44,

Plaintiffs conceded at argument that New York's common law does not presently recognize the tort of intrusion upon seclusion.[4] Tr. 43. I therefore conclude that an outcome determinative conflict of law exists with respect to Plaintiffs' claim of intrusion upon seclusion. *See generally Howell v. New York Post Co.*, 81 N.Y.2d 115, 123 (1993) ("[W]e have no common law of privacy."); *Messenger v. Gruner Jahr Printing & Pub.*, 208 F.3d 122, 125 (2d Cir. 2000) ("New York does not recognize a common law right of privacy.").

### 2.    New York Law Applies

In their briefing, Plaintiffs objected that it is premature to undertake a choice-of-law analysis based solely on the facts in the FAC. Pls.' Mem. 18; *see also Bristol–Myers Squibb Co. v. Matrix Lab'ys Ltd.*, 655 F. App'x 9, 13 (2d Cir. 2016) (summary order) ("Numerous district courts in this Circuit have concluded that choice-of-law determinations are fact-intensive inquiries that would be premature to resolve at the motion-to-dismiss stage."). But at argument, Plaintiffs' counsel did not identify any disputed facts that bear on choice of law. Tr. 28-29; 36-37.[5] Indeed, Plaintiffs urge me to conclude based on the record before me that

---

[4] Plaintiffs made this concession after alerting me to a development in a related action by Otterbourg against another former colleague, Ikhwan A. Rafeek, in New York Supreme Court. ECF No. 59. In that case, Otterbourg asserted several common law claims against Rafeek, including intrusion upon seclusion. The Court (the Honorable Timothy S. Driscoll) concluded that New York's common law does not recognize intrusion upon seclusion. *Id.* at 11.

[5] Plaintiffs argue that discovery would illuminate where Cretella was at the time he conducted the searches. Tr. 29-30. Even assuming that discovery confirmed the FAC's allegation that Cretella conducted "a substantial portion" of his searches from his home in Connecticut, FAC ¶¶ 31, 35, this fact (which in any case is not disputed by Cretella) would not require applying Connecticut law. Plaintiffs also offered that expert testimony might help resolve choice of law. Tr. 29. Plaintiffs do not explain why expert testimony would be relevant or necessary to my application of the analysis set forth in the Restatement (Second) of Conflict of Law.

8

Connecticut law applies. *Id.* at 36. I therefore proceed to proceed to analyze choice of law based on the facts alleged in the FAC.

The Connecticut Supreme Court has instructed that choice of law in tort should be analyzed according to the "most significant relationship" test described in the Restatement (Second) of Conflict of Law. *W. Dermatology Consultants, P.C. v. VitalWorks, Inc.*, 322 Conn. 541, 558 (2016); *see generally* Restatement (Second) of Conflict of Laws (1971) ("Restatement"). The Restatement offers overarching principles that guide choice of law in all disputes, *id.* § 6, principles for tort claims in general, *id.* § 145, and specific guidance for choice of law in privacy torts, *id.* § 152. As other courts have explained, my analysis begins by applying § 152, "which set[s] forth the presumptive rule" for invasion of privacy torts. *Sarver v. Chartier*, 813 F.3d 891, 897 (9th Cir. 2016). This "presumptive rule" is then compared to "the general tort principles outlined in section 145 of the Second Restatement." *Id.* I then compare New York and Connecticut's respective interests with respect to this dispute with the assistance of the general principles set forth in § 6. *Id.*; *accord W. Dermatology*, 322 Conn. at 559 (describing § 145(2) as establishing "black-letter rules of priority to facilitate the application of the principles of § 6 to tort cases") (citation and internal quotation marks omitted).

Section 152 of the Restatement states as follows:

In an action for an invasion of a right of privacy, *the local law of the state where the invasion occurred determines the rights and liabilities of the parties*, except as stated in § 153, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

9

*Id.* § 152 (emphasis added). Comment C clarifies that "[w]hen the invasion involves an intrusion upon the plaintiff's solitude, the place of the invasion is the place where the plaintiff was at the time." *Id.* cmt. c.

Cretella argues that because Plaintiffs live and work in New York, New York is the place where the alleged invasion occurred for purposes of § 152 of the Restatement. Def.'s Mem. 18-19. Plaintiffs respond that the place of invasion is Cretella's home in Connecticut, where he viewed Plaintiffs' private documents. Pls.' Mem. 26. Plaintiffs posit that Comment C—which instructs that the place of invasion is where the plaintiff was at the time—is ill-suited to online intrusions into an individual's electronic records, which they say "exist separate and apart" from their physical person. *Id.* Plaintiffs also suggest that applying § 152 in the manner described by Cretella would make choice of law turn on wherever the plaintiff happened to be at the time of the intrusion, which they say would lead to absurd results. *Id.* Finally, Plaintiffs assert that § 152 is not dispositive and urge me to rely instead on § 6 and § 145 of the Restatement. *Id.* at 26-27.

I am not persuaded that the nature of this intrusion—that is, Cretella's ability to access Plaintiffs' files on Otterbourg's servers—is so different from the types of invasions contemplated at the time the Restatement was written that I should set aside § 152's instruction to focus on the location of the plaintiffs at the time of the intrusion. Because intrusion upon seclusion is a "tort that occurs through the act of interception itself," *Caro v. Weintraub*, 618 F.3d 94, 101 (2d Cir. 2010), it would not be uncommon for a defendant to access a plaintiff's private information or communications separate and apart from the plaintiff's person. Indeed, such a scenario could have played out even at the time the Restatement was written in 1971. For example, if a defendant impersonates the plaintiff at a bank to secure their financial

10

statements,[6] the tort occurs at the moment the defendant secures the plaintiff's financial statements. Section 152 instructs that "[w]hen the invasion involves an intrusion upon the plaintiff's solitude, the place of the invasion is the place where the plaintiff was at the time." Accordingly, the state where the plaintiff was located at the time of the invasion—even if the injury-causing conduct occurred elsewhere—is presumptively the state with the most significant relationship to the dispute. Restatement § 152 cmt. c. The fact that the defendant has viewed via remote means records that are located in a different state does not change the analysis. Even if the defendant is in a different state from the records he wrongfully accesses, § 152 of the Restatement still points back to the plaintiff's location at the time as the "place of invasion."

Because the FAC alleges that Plaintiffs lived and worked in New York when Cretella accessed their materials, New York is presumptively the state with the most significant relationship with respect to this claim of intrusion upon seclusion.[7]

Even assuming that the place where the invasion occurred were not readily ascertainable, the § 145 factors also clearly favor New York. Section 145 instructs courts to consider the following four factors:

> (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of

---

[6] I draw this example from the Restatement (Second) of Torts, § 652B, which the Connecticut Supreme Court has embraced as an authoritative source on torts sounding in invasion of privacy. *See, e.g., Foncello v. Amorossi*, 284 Conn. 225, 234 (2007); *Goodrich*, 188 Conn. at 128.

[7] I also disagree with Plaintiffs insofar as they argue that § 152 could produce the absurd result of choice of law turning on wherever a plaintiff happened to be at the time of intrusion, even if they were on an international vacation at the time. These circumstances are not present here. Moreover, § 152 provides that if "some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties" then the local law of the other state will be applied.

incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered.

Restatement (Second) § 145(2). "[I]t is the significance, and not the number, of § 145(2) contacts that determines the outcome of the choice of law inquiry." *W. Dermatology*, 322 Conn. at 560 (citation and internal quotation marks omitted).

Although the parties disagree about the weight I should assign to each factor, they largely agree on the direction in which each factor cuts. Cretella relies on factors (a), (c), and (d), arguing that because the alleged injuries occurred in New York, the plaintiffs are New York citizens, all the parties do business in New York, and this dispute centers on Cretella's relationship with his former law partners at a New York City law firm, New York law applies. Def.'s Mem. 19-24. As to factor (b), Cretella does not dispute that Cretella initiated a substantial number of the searches from his home in Connecticut, FAC ¶¶ 31, 35; instead, he asserts that Cretella's location is less significant to the present dispute. Def.'s Mem. 20-21;[8] Def.'s Reply 7-8. Plaintiffs respond that Cretella's location in Connecticut at the time he viewed Plaintiffs' files should be the most significant factor. Pls.' Mem. 20-22. Moreover, Plaintiffs object that the place where the parties worked together has no bearing on this dispute because Cretella acted "outside the scope of any established relationship" he had with the Plaintiffs. *Id.* at 20-21.

I agree with Cretella that factors (c) and (d) weigh heavily in favor of applying New York law. The parties worked together for more than 20 years at Otterbourg, a New York law

---

[8] In his opening brief, Cretella argued that factor (b) favors New York because Cretella was searching for files in Otterbourg's New York-based network. Def.'s Mem. 20-21. I do not consider this argument insofar as it requires me to analyze facts not presented in the FAC or subject to judicial notice.

12

firm. FAC ¶ 28. Cretella's assertedly tortious conduct was possible only during the period when Cretella was working at Otterbourg: the FAC alleges that files were accessible only while Cretella remained a "designated attorney" at the firm. *Id.* ¶ 10. In arguing that Cretella engaged in wrongful conduct, Plaintiffs refer repeatedly to the fact that he transgressed the "legal and ethical boundaries" expected of any licensed attorney. *Id.* ¶¶ 20, 22. Furthermore, the FAC alleges that Cretella invaded Plaintiffs' privacy because he was looking for "confidential information that could potentially be used against the firm's leadership." *Id.* ¶ 46. Thus, at bottom, Plaintiffs challenge conduct that can only be understood within the context of the parties' decades-long professional relationship practicing law together in New York. Because the parties' relationship was centered in New York, these factors favor applying New York law. *See W. Dermatology*, 322 Conn. at 560 (finding that factor (d) favored applying the law of the state where the legal relationship between the parties initiated and where the professional relationship was centered).

Nor am I convinced that factor (b) outweighs New York's interest. Connecticut's interest arises principally from the fact that Cretella happened to be in Connecticut when he accessed Plaintiffs' files. But this dispute has very little to do with Cretella's decision to access Plaintiffs' files from his home; indeed, it appears that Cretella could have engaged in these searches from anywhere he could connect remotely to Otterbourg's servers. Thus, Connecticut's interest over this dispute does not appear to be substantial. *See Jaiguay v. Vasquez*, 287 Conn. 323, 353 (2008) (stating that factor (b) did not require applying Connecticut law where "it was mere happenstance that the [tortious conduct] occurred in Connecticut").

Plaintiffs rely on Comment C of § 145, which states that where the "primary purpose of the tort rule involved is to deter or punish misconduct . . . the state where the conduct took place may be the state of dominant interest and thus that of most significant relationship." Pls.' Mem. 21-22. Plaintiffs contend that, because intrusion upon seclusion is a tort designed to deter misconduct, Connecticut—the state where the misconduct occurred—is the state with the most significant relationship to this dispute. *Id.* But as the Restatement observes, "every tort rule is designed both to deter other wrongdoers and to compensate the injured person. Undoubtedly, the relative weight of these two objectives varies somewhat from rule to rule, and in the case of a given rule it will frequently be difficult to tell which of these objectives is the more important." Restatement § 145 cmt. c. Because intrusion upon seclusion, like nearly all tort rules, can be understood both to deter conduct and compensate injured people, the fact that injury-causing conduct occurred in Connecticut does not require applying Connecticut law.[9]

The factors set forth in § 6 of the Restatement confirm that New York law should apply. Section 6 instructs courts to analyze the following factors:

> (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the

---

[9] Here, the fact that New York has decided *not* to regulate the conduct does not prevent New York law from applying. *See, e.g.*, *Locke v. Aston*, 31 A.D.3d 33, 37-38 (N.Y. App. Div. 2006) (concluding that New York law applied although the alleged conduct did not give rise to a civil claim in New York in case involving the "question of whether California law, which prohibits the taping of a telephone conversation without both parties' knowledge and consent, or New York law, which allows such taping if one party consents, applies to a New York resident's claim for damages for the surreptitious taping of such conversations by a California resident calling him in New York from California").

14

      particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws, § 6.

    "Not all of the § 6 factors will be equally important in every case. Indeed, comment b to § 145(1) states that the choices of policy emphasized in § 6(d), (e), and (f) are 'of lesser importance in the field of torts.'" *Rosenthal v. Ford Motor Co.,* 462 F. Supp. 2d 296, 303 (D. Conn. 2006) (quoting Restatement § 145 cmt. b). Nor is § 6(a) implicated here. That provision, which focuses on "the needs of the interstate" system, Restatement § 6(a), "aims, in part, 'to facilitate commercial intercourse between' the states." *Precision Trenchless, LLC v. Saertex multiCom LP*, No. 3:19-CV-0054 (JCH), 2022 WL 596740, at *13 (D. Conn. Feb. 28, 2022) (quoting Restatement § 6 cmt. d.). But because choice of law in this personal injury action is unlikely to disrupt the flow of goods and services across state lines, I do not attach great weight to this factor. I also place no weight on § 6(g), which analyzes the "ease in the determination and application of the law to be applied," because I do not find there to be a meaningful difference in the difficulty of applying New York or Connecticut law to this dispute.

    With respect to the policies of the forum state, Cretella acknowledges that Connecticut has an interest in regulating his conduct. Def.'s Mem. 22. I must therefore weigh that interest against the policy of New York, which does not allow for a tort claim in these circumstances. Applying the tests set forth in sections 145 and 152, I have found that New York's countervailing interest is much more significant in these circumstances. Nonetheless, at argument, Plaintiffs argued that New York law should be afforded considerably less weight because the rationale animating New York's policy choice not to recognize privacy torts remains inscrutable, whereas Connecticut has spoken clearly about why it saw fit to recognize

the tort of intrusion upon seclusion. Tr. 33-36. Even assuming *arguendo* that New York's decision not to recognize intrusion upon seclusion were truly illogical, I am not persuaded that such an idiosyncrasy in New York common law—if it indeed exists—would provide cause to apply Connecticut law to what is otherwise a New York-centered dispute between New York law partners.

In sum, having considered the factors set forth in sections 152, 145, and 6, I conclude that New York has the most significant relationship to this dispute. Because I conclude that New York law applies, and New York does not recognize the tort of intrusion upon seclusion, the one-count FAC is dismissed.

### C.    Leave to Amend

On February 10, 2026, three days before argument on the Motion to Dismiss, Plaintiffs submitted a Notice of Supplemental Authority. ECF No. 59. In that Notice, Plaintiffs alerted me to developments in *Stehl & Otterbourg v. Rafeek*, No. 612762/2025, a case pending in New York state court. *Id.* at 2. In that case, the New York Supreme Court (the Honorable Timothy S. Driscoll) held that Plaintiffs' claim of intrusion upon seclusion against another former lawyer from their firm failed to state a claim under New York common law, but permitted Plaintiffs to replead that cause of action as a claim for intentional infliction of emotional distress ("IIED"). *Id.* at 10-11. Plaintiffs' Notice requests that, in the event I conclude New York law applies, I should grant leave to amend the complaint to bring an IIED claim. *Id.* at 2.

"It is the usual practice upon granting a motion to dismiss to allow leave to replead." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *see also Golla v. Neovasc, Inc.*, No. 22-361-CV, 2023 WL 2469770, at *3 (2d Cir. Mar. 13, 2023) (summary order) ("When a motion to dismiss is granted, the usual practice is to grant leave to amend the

complaint.") (citation and internal quotation marks omitted). Under the permissive standard for amendments set forth in Rule 15(a)(2),[10] a court may deny leave to amend only upon a showing of "futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007); *accord Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 115 (2d Cir. 2021).

At argument, Cretella objected to granting leave to amend, contending that Plaintiffs forfeited the opportunity to amend the complaint by not requesting leave to amend within their response brief. Tr. 46. Cretella also argued that justice does not require granting leave to amend where a plaintiff seeks to pursue a new legal theory without alleging new facts. *Id.* at 21. Cretella asserted that permitting Plaintiffs to plead an IIED claim would be futile in this instance because any IIED claim fails as a matter of law. *Id.* at 23-24. Cretella finally urged me to deny leave to amend because of Plaintiffs' delay in pursuing amendments. *Id.* at 24. I address each argument in turn.

I do not find that Plaintiffs forfeited the opportunity to obtain leave to amend the complaint by failing to include a request within their response brief. The Second Circuit has rejected the proposition that a plaintiff forfeits the opportunity to amend by declining to replead without the benefit of a ruling on a motion to dismiss. *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015); *see also Kopchik v. Town of E. Fishkill, New York*, 759 F. App'x 31, 38 (2d Cir. 2018) (summary order) ("It is inappropriate to deny a plaintiff the opportunity to replead after a defendant's motion to dismiss is granted, simply

---

[10] The Scheduling Order governing this action provides that requests to amend the complaint are governed by Rule 15(a)(2) until 90 days after Defendant files his Answer. ECF No. 44, at 1.

17

because the plaintiff decided not to replead before learning whether the court would find the complaint insufficient."). Moreover, the Second Circuit has not deemed a "request for leave to amend insufficient on the basis of form alone." *Loreley*, 797 F.3d at 190; *see also Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006) ("[A] lack of a formal motion is not a sufficient ground for a district court to dismiss without leave to amend.").

Nor am I convinced that leave to amend should be denied on the grounds of undue delay or prejudice. To be sure, Plaintiffs' request to amend comes very late. At argument, Plaintiffs clarified that they requested leave to amend their New York state court complaint in conjunction with responding to a motion to dismiss in that case in the summer of 2025. Tr. 47-48. Plaintiffs did not explain why they waited until after the New York state court ruled that intrusion upon seclusion is not cognizable under New York law to request leave to amend here. But at the same time, Cretella has not articulated why he would be prejudiced by granting Plaintiffs leave to amend. Indeed, discovery remains stayed in this case. And although Cretella undoubtedly would prefer closure with respect to this action, it appears that litigation would continue between these parties even if I were to dismiss this suit with prejudice. ECF Nos. 53 & 54 (discussing relevance of *Otterbourg P.C. v. Cretella*, an action filed in New York state court in the summer of 2025).

Finally, I cannot say from the present record that an IIED claim would be futile. Cretella contended at argument that any IIED claim Plaintiffs were to assert would not satisfy the "pretty high bar" required for such claims. Tr. 21.[11] But because the futility analysis is the

---

[11] "To state a claim for intentional infliction of emotional distress, it must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that emotional distress

functional equivalent of a motion to dismiss, *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002), I will defer ruling on the futility of the IIED claim until Cretella moves to dismiss the amended complaint. If Cretella moves to dismiss that claim, I will decide then—with the benefit of full briefing—whether the IIED claim fails as a matter of law.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss the First Amended Complaint is granted with leave for Plaintiffs to amend to assert a single cause of action for intentional infliction of emotional distress. Plaintiffs shall file a Second Amended Complaint on or before March 20, 2026. Any motion to amend the complaint filed after this date will be subject to the good cause standard of Fed. R. Civ. P. 16(b)(4). The stay of discovery remains in effect. On or before March 30, 2026, the parties are directed to confer and file a Joint Notice proposes deadlines for briefing a renewed motion to dismiss and (2) states whether the parties seek a referral to a United States Magistrate Judge for the purpose of conducting a settlement conference. If Defendant does not intend to file a Rule 12 motion, the parties shall instead file a Local Rule 26(f) report proposing deadlines for discovery.

**SO ORDERED.**

New Haven, Connecticut
February 27, 2026

/s/*Sarah F. Russell*
SARAH F. RUSSELL
United States District Judge

---

sustained by the plaintiff was severe." *Ryder v. J.P. Morgan Chase Bank*, No. 3:13-CV-01929 (AVC), 2015 WL 13793263, at *12 (D. Conn. Aug. 19, 2015). The same requirements apply under New York law. *Brown v. New York Design Ctr., Inc.*, 185 N.Y.S.3d 97, 101 (2023).